IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIRCHOW KRAUSE CAPITAL, LLC,<br>n/k/a/ BAKER TILLY CAPITAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN H. NORTH,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 11 C 8169<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Virchow Krause Capital, LLC n/k/a Baker Tilly Capital, LLC's (Baker) motion for a preliminary injunction. For the reasons stated below, the motion is granted.

## BACKGROUND

Baker allegedly acted as a placement agent for an investment in subordinated notes issued by an entity known as KeyLime Cove of Gurnee, LLC (KeyLime). In April 2007, Defendant John H. North (North) allegedly entered into a contract to purchase notes from KeyLime (Purchase Contract) through Ausdal Financial Partners, Inc. (Ausdal). Baker asserts that it had no contact with North prior to North

1

making his investment or during the actual investment process. Baker also contends that it is not a party to the Purchase Contract. In October 2009, KeyLime allegedly filed for bankruptcy. On August 29, 2011, North initiated arbitration proceedings (Arbitration Proceedings) by filing a Statement of Claim with the Financial Industry Regulatory Authority (FINRA) naming Ausdal and Baker as Respondents. Baker contends that it made a request to FINRA to deny North's request to arbitrate against Baker. FINRA allegedly denied the request. Baker asserts that it did not enter into any arbitration agreement with North and is not required to arbitrate the claims presented by North in the Arbitration Proceedings. Baker brought the instant action and includes in its complaint a claim seeking a declaratory judgment stating that it is not required to arbitrate the claims brought by North. Baker also includes in the complaint a claim seeking to enjoin North from proceeding against Baker in the Arbitration Proceedings. Baker now moves for a preliminary injunction.

## DISCUSSION

I. Initial Requirements

A party seeking a preliminary injunction must initially establish: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim period

2

prior to final resolution of its claims," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party fails to satisfy any of the above elements, the court must deny the motion for a preliminary injunction. *Id.*

    A. Irreparable Harm and Inadequate Remedy at Law

Baker contends that it will suffer irreparable harm and have an inadequate remedy at law if forced to participate in the Arbitration Proceedings. Baker contends that it never consented to arbitration. Forcing a party which did not consent to arbitration to participate in arbitration has been recognized *per se* as an irreparable harm. *See, e.g., Interactive Brokers, LLC v. Duran*, 2009 WL 393827, at *5 (N.D. Ill. 2009). In this case, if Baker is forced to participate in the Arbitration Proceedings and the court subsequently determines that Baker was not required to participate, some of the financial expenses incurred at the Arbitration Proceedings can be recovered. However, it will be difficult to calculate the loss to Baker in the form of time and inconvenience to Baker's representatives. In addition, the entire relief sought by Baker in this case is to prevent Baker from being forced to participate in the Arbitration Proceedings. If the court were to deny the motion for a preliminary injunction and Baker were forced to participate in the Arbitration

3

Proceedings while this case proceeded, the claims in this case would largely become moot. Further, Baker would have no adequate remedy at law to rectify the harms it would suffer if forced to arbitrate unnecessarily. Thus, Baker has shown irreparable harm and inadequate remedy at law.

### B. Likelihood of Success on the Merits

Baker contends that it has a likelihood of success on the merits. For the purposes of a preliminary injunction motion, as indicated above, the movant need only make a showing of some likelihood of success on the merits. *Girl Scouts*, 549 F.3d at 1086. The movant bears the initial burden of making a clear showing that it is entitled to prevail on the merits, which can be established by showing that the movant has "a better than negligible chance of succeeding on the merits. . . ." *Chicago Dist. Council of Carpenters Pension Fund v. K & I Construction, Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001).

Baker argues that it is not required to submit to arbitration under the FINRA Code of Arbitration Procedure for Customer Disputes (FINRA Code) because it did not have a customer relationship with North. FINRA Code Rule 12200 provides in part that arbitration is required when it is "requested by the customer." Rule 12200. The only elaboration as to the term "customer" in the FINRA Code is FINRA Code

4

Rule 12100(i), which states that "[a] customer shall not include a broker or dealer." FINRA Code Rule 12100(i); *see also Interactive Brokers, LLC v. Duran*, 2009 WL 393827, at *1 (N.D. Ill. 2009)(explaining that "FINRA is the primary regulator of broker dealers in the United States").

Baker cites *Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 2011 WL 3294682 (D. Minn. 2011), in which the court held that investors "can arbitrate their claims against [entities], with whom they dealt directly; but they cannot fold into the arbitrations claims against other entities with whom they have no direct relationship." *Id.* at *5; *see also Legent Clearing, LLC v. Balistreri*, 2009 WL 2567947, at *3 (N.D. Ill. 2009)(stating that in assessing whether the plaintiff was a customer it considered whether the plaintiff made "independent investment decisions"); *Interactive*, 2009 WL 393827, at *1 (stating that the defendants did "not qualify as 'customers' under Rule 12200 by virtue of being 'customers of a customer'").

North cites *UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643 (2nd Cir. 2011), in which the court held that "a definition of customer . . . at least includes an entity that undertakes to purchase a good or service," such as "contracting . . . to obtain auction services for a fee." *Id.* at 650. In this case, Baker contends that it had only limited contacts with North and

5

that its contacts did not occur before or when North invested in KeyLime. Based upon the limited record, Baker has shown a better than negligible likelihood of success on the merits.

The court notes that it is ruling based solely upon the limited record before the court at this juncture. Whether an entity was a customer under the FINRA Code involves a fact intensive inquiry and must be based on the particular circumstances in a case. *See, e.g., Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 39 (2nd Cir. 2010); *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 173 (2nd Cir. 2011). At the summary judgment stage, the parties will be able to more fully brief this issue. The parties will also be able to present a more detailed record concerning matters such as the precise business relationship that existed between Baker and North, the contacts Baker had with North, and when they occurred. Based upon the above, Baker has satisfied the three threshold requirements for the motion for preliminary injunction.

II. Balancing Phase

If the moving party satisfies all of the initial requirements for a preliminary injunction, the court must "proceed[] to the balancing phase of the analysis." *Girl*

6

*Scouts*, 549 F.3d at 1086. During the balancing phase, the court should balance: (1) the potential harm to the parties, (2) the likelihood of success on the merits, and (3) the public interest. *Id.* The court should employ "a sliding scale approach: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (internal quotations omitted)(quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)).

A. Potential Harm to the Parties

Baker contends that it will suffer more severe harm if the motion for a preliminary injunction is denied than North will suffer if the motion is granted. If the motion is denied, the Arbitration Proceedings will continue and Baker's claims in this case will largely be mooted. In addition, a denial of the motion may ultimately result in Baker being forced into arbitration even though it never agreed to arbitrate disputes when entering into a relationship with North. On the other hand, if the motion is granted the Arbitration Proceedings may be delayed. North argues that he "should not have to wait long for arbitration. . . ." (Ans. 10). However, an efficient resolution of the issues in this case will prevent any delay in the Arbitration Proceedings and thus not create any significant hardship to North. Further, North

7

may be harmed by spending time in arbitration proceedings that are later invalidated. Thus, both sides will benefit from a resolution of the legal issues in this case in advance of any arbitration. Based on the above, a consideration of the potential harm to the parties favors granting the motion.

### B. Likelihood of Success on the Merits

As indicated above, Baker has shown a better then negligible likelihood of success on the merits. The balancing of the potential harms significantly favors Baker in this case. A resolution of the legal issues presented in this case in advance of any arbitration would be the most efficient manner to resolve the parties' dispute. Under the sliding scale approach, Baker need only show a minimal likelihood of success on the merits, and Baker has done so.

### C. Public Interest

North argues that the public interest is served by following the policy set forth in case law strongly favoring resolution of disputes in arbitration. The Seventh Circuit has indicated that "[t]here is a strong federal policy favoring arbitration embodied in the Federal Arbitration Act." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). In this case, by granting the instant motion, the policy

favoring arbitration can still be served. Further, another policy consideration in this case will also be served in that a party should only be subjected to arbitration if that party has consented to arbitration. As Baker correctly points out, while there is a strong policy favoring arbitration, that policy does not include forcing a party into arbitration when the party had never agreed to arbitrate the dispute. The essence of arbitration is that it is a voluntary agreement between parties to resolve disputes in the arbitration format. The United States Supreme Court has stated that arbitration "is a matter of consent, not coercion" and that "[t]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volkswagen Of America, Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007)(internal quotations omitted)(quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Through an efficient resolution of the issues presented in this case, any disruption to the Arbitration Proceedings will be minimal. Thus, the public interest clearly favors granting the instant motion. Therefore, based on the above, the motion for a preliminary injunction is granted.

### III. Summary Judgment Briefing

In light of the need to promptly resolve the issues in this case, the court will

expedite the briefing for dispositive motions and provide deadlines for the filing of dispositive motions in this case. As Baker itself indicates, the potential harm to North is not significant as long as there is merely a "limited delay to the Arbitration." (Mem. Prel. 10). The parties are therefore given until February 13, 2012 to file dispositive motions. Answers to dispositive motions are due by February 27, 2012, and any replies are due by March 5, 2012. The status hearing set for January 25, 2012 is reset to March 27, 2012, at 9:00 a.m.

      The court notes that North filed a cross-motion to compel arbitration. However, in his cross-motion, North seeks a resolution on the merits of the claims in this action. The arguments in the cross-motion are more appropriately presented in a motion for summary judgment. While North can argue under the summary judgment standard that as a matter of law he is entitled to prevail on the merits, North cannot request that the court act as a fact-finder at this juncture and rule in his favor as to the merits of the claims presented by Baker. The court has set briefing for dispositive motions, and North can present his arguments and supporting evidence in a dispositive motion. Therefore, the cross-motion to compel arbitration is denied without prejudice.

## CONCLUSION

Based on the foregoing analysis, Baker's motion for a preliminary injunction is granted and the cross-motion to compel arbitration is denied without prejudice. Baker is order to submit to the court a draft order consistent with the above opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:  January 17, 2012