IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIRCHOW KRAUSE CAPITAL, LLC, n/k/a BAKER TILLY CAPITAL, LLC, Plaintiff, v. JOHN H. NORTH, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) No. 11 C 8169 |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Virchow Krause Capital, LLC n/k/a Baker Tilly Capital, LLC's (Baker) motion for summary judgment, and on Defendant John H. North's (North) motion for summary judgment. For the reasons stated below, Baker's motion for summary judgment is granted, and North's motion for summary judgment is denied.

**BACKGROUND**

Baker acted as a placement agent for an investment in subordinated notes (Investment) issued by an entity known as KeyLime Cove of Gurnee, LLC

(KeyLime). In April 2007, North entered into a contract to purchase notes from KeyLime (Purchase Contract) through Ausdal Financial Partners, Inc. (Ausdal). Baker asserts that it had no contact with North prior to the time North made his investment or during the actual investment process. Baker also contends that it is not a party to the Purchase Contract. In October 2009, KeyLime allegedly filed for bankruptcy. On August 29, 2011, North initiated arbitration proceedings (Arbitration Proceedings) by filing a Statement of Claim with the Financial Industry Regulatory Authority (FINRA) naming Ausdal and Baker as Respondents. Baker contends that it made a request to FINRA to deny North's request to arbitrate against Baker. FINRA allegedly denied the request. Baker asserts that it did not enter into any arbitration agreement with North and that it is not required to arbitrate the claims presented by North in the Arbitration Proceedings. Baker brought the instant action and includes in its complaint a claim seeking a declaratory judgment stating that it is not required to arbitrate the claims brought by North. Baker also includes in the complaint a claim seeking to enjoin North from proceeding against Baker in the Arbitration Proceedings. Baker moved for a preliminary injunction, and on January 17, 2012, the court granted the motion for a preliminary injunction. Baker and North now each move for summary judgment.

# LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made. *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

# DISCUSSION

Baker argues that it did not enter into an arbitration agreement with North and that Baker did not have a relationship with North that would require Baker to arbitrate the instant dispute under FINRA Rules. The parties agree that the determinative rule in this case is FINRA Rule 12200, which provides in part the following:

Parties must arbitrate a dispute under the Code if:

a) Arbitration under the Code is either:
   1) required by a written agreement, or
   2) requested by the customer;
b) the dispute is between a customer and a member or associated person of a member; and
c) the dispute arises in connection with the business activities of the member or the associated person. . . .

FINRA Rule 12200; *see also Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, 2012 WL 113400, at *3, n.5 (D. Md. 2012)(explaining that "[t]he NASD Code of Arbitration was the predecessor to the FINRA Code and FINRA has stated that it intended no substantive change when it replaced NASD Rule 10301 with FINRA Rule 12200"). FINRA does not define the term "customer," other than providing that "'[a] customer shall not include a broker or dealer.'" *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172-73 (2nd Cir. 2011)(quoting FINRA Rule 12100(i)). While some courts have held that the term "customer" should not be interpreted too narrowly, other courts have held that the

4

term should not be construed so broadly as to "upset the reasonable expectations of FINRA members." *Gilmore v. Brandt*, 2011 WL 5240421, at *4 (D. Colo. 2011)(internal quotations omitted)(quoting *Herbert J. Sims & Co. v. Roven,* 548 F. Supp.2d 759, 764 (N.D. Cal. 2008)). Courts have also held that the definition of "customer" should not be construed too broadly, indicating that the FINRA rules were not "meant to apply to every sort of financial service [a member] might provide, regardless of how remote that service might be from the investing or brokerage activities. . . ." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001). A "customer" under FINRA is generally "one who receives investment and brokerage services or otherwise deals more directly with securities . . . ." *Id.*

The Seventh Circuit has recognized that there is a "federal policy favoring arbitrability" when disputants have agreed to arbitrate a dispute. *Karl Schmidt Unisia, Inc. v. International Union, United Auto., Aerospace, and Agr. Implement Workers of America, UAW Local, 2357*, 628 F.3d 909, 913 (7th Cir. 2010). In addition, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)(internal quotations omitted)(quoting *AT&T Mobility LLC v. Concepcion*,

131 S.Ct. 1740, 1745 (2011)). Underlying the federal policy favoring resolution in arbitration is the principle that parties in arbitration have contractually agreed to have their dispute resolved by an alternate resolution method. *See Gore*, 666 F.3d at 1032. The Seventh Circuit has stated that "because arbitration is a matter of contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

It is undisputed that the parties in the instant action never entered into any agreement with each other that contained any sort of arbitration agreement. Nor is there any evidence that North dealt with an "associated person" of Baker. *See, e.g.,* FINRA Rule 12100(r)(defining "associated person"); *Waterford Inv. Services, Inc. v. Bosco*, 2011 WL 3820723, at*10 (E.D. Va. 2011)(addressing scope of phrase "associated person"); *AXA Distributors, LLC v. Bullard*, 2008 WL 5411940, at *5 (M.D. Ala. 2008)(addressing whether independent contractors were "associated persons" under FINRA). It is undisputed that although Baker is a registered broker dealer, and Baker was allowed to offer investments in KeyLime Cove, Baker appointed Ausdal as an independent third-party broker dealer. (P SF II Par. 5-8). The undisputed evidence shows that it was Ausdal that dealt with North regarding his decision to join in the Investment. (R P SF II 7-8).

6

North argues that he should be deemed a customer of Baker for the purposes of FINRA Rules. The undisputed evidence shows that North made his investment after dealing with a licensed and supervised representative of Ausdal. Ausdal was responsible for conducting due diligence regarding the offered Investment before providing investment advice to North, and Baker merely served as the placement agent for the Investment. (R PSF I Par. 4, II, 7-12).

Baker contends that it did not have any contact with North prior to North deciding to join in the Investment or during the making of the Investment. North points to certain communications concerning the Investment sent by Baker to North on April 2, 2007 and April 27, 2007 (collectively referred to as "April 2007 Communications"), and Baker has not disputed that such communications occurred. (R DSF Par. 20-24). However, North has not pointed to any evidence showing that the April 2007 Communications involved investment advice or services or related to North's decision to make an investment. The undisputed evidence shows that it was Ausdal that advised North concerning the Investment. (R PSF Par. 7-12). The undisputed record also reflects that by the time the April 2007 Communications occurred, North had already decided to join in the Investment based upon the advice of Ausdal. (DSF Par. 19); *see also Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 818 (11th Cir. 1993)(examining whether the member had a "relationship at the

time of the alleged events that Appellants s[ought] to arbitrate"). In fact, it is undisputed that in March 2007, prior to the April 2007 Communications, North had already financially committed to the Investment and had issued the check for the Investment. (DSF Par. 19).

North also points out that Baker was responsible for handling paperwork and receiving North's funds when he made his investment and that Baker acknowledged receipt of the money. (R DSF Par. 18-24). However, the undisputed evidence also reflects that the funds were not paid to Baker, but that Baker merely collected the funds from North and placed them in an escrow account. North also points out that in one communication, Baker invited North to contact Baker for any "further assistance." (R DSF Par. 21). Such a phrase offering further assistance does not show that Baker provided investment services or advice to North concerning the Investment or had any involvement in North's decision to invest in the Investment. In fact, pursuant to Local Rule 56.1, by failing to respond to Baker's statement of fact Paragraphs 15 and 16, North admits that Baker "was not involved in the sale or recommendation of the" Investment, and that any contact by Baker with North "was limited to the time period after [North] made both the decision to invest and the investment itself." (R PSF II Par. 15, 16). The record also reflects that Baker was the underwriter for the Investment, (P Reply 4), but North cites no case in which such a

8

limited role in an investment subjected the underwriter to FINRA arbitration. *See Morgan*, 2012 WL 113400, at *4 (noting that in *UBS Fin. Servs., Inc., v. W. Va. Univ. Hosp., Inc.,* 660 F.3d 643 (2nd Cir. 2011), the court "specifically declined to rule on the more ambiguous question of whether or not an issuer is a customer of its underwriter").

North relies heavily upon the holding in *UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643 (2nd Cir. 2011). (D Mem. SJ 7). In *UBS*, the court stated that "[t]he term 'customer' includes at least a non-broker or non-dealer who purchases, or undertakes to purchase, a good or service from a FINRA member." *Id.* at 650. However, unlike in the instant action, the FINRA member in *UBS* formed a direct relationship with the defendant, and pursuant to multiple contracts, agreed to purchase auction-rate securities from the defendant and re-sold them to customers and other dealers. *Id.* at 646-47. There is no evidence in this case indicating that Baker formed any direct relationship with North concerning investments or contracted in any way with North concerning the making of investments. *See Twenty-First Securities Corp. v. Crawford*, 2011 WL 6326128, at *2 (S.D.N.Y. 2011)(noting that in *UBS,* the court ruled that a sufficient nexus existed if the member gave investment advice). Thus, based upon the undisputed evidence, North was not a customer of Baker under FINRA Rules. Instead, Baker acted in a

limited role and was not involved in a relationship with North regarding the decision to invest in the Investment.  Baker's relationship with North was the type of "tenuous" and "attenuated" relationship that courts have concluded would not create a customer relationship under FINRA.  *See, e.g., Morgan*, 2012 WL 113400, at *4 (concluding that the "defendants provide[d] no authority that persuade[d] [the court] to read 'customer' so broadly as to include the tenuous relationship between defendants and" the FINRA member); *White Pacific Securities, Inc. v. Mattinen*, 2012 WL 952232, at *5 (N.D. Cal. 2012)(finding a sufficient and un-attenuated relationship with "associated person" of member).  The undisputed evidence shows that North did not enter into any direct investment relationship with Baker and the parties did not enter into any agreement in which they agreed to arbitrate any potential disputes.  North cannot use its relationship with Ausdal to force Baker to engage in an arbitration in which it never consented to participate.  *See Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 2011 WL 3294682, at *5 (D. Minn. 2011)(stating that "[t]he Investors c[ould] arbitrate their claims against the [Selling Group Members], with whom they dealt directly; but they cannot fold into the arbitrations claims against other entities with whom they have no direct relationship").  North is seeking to arbitrate issues relating to investment advice, not relating to whether Baker properly deposited funds in an escrow account after North joined in the Investment.

To allow an overly broad definition of "customer" under FINRA would not accurately recognize the relationship between FINRA members and other parties, and would not accord FINRA members with the terms that they should have reasonably expected to exist when joining FINRA. *See, e.g., Morgan*, 2012 WL 113400, at *4 (stating that "[i]nterpreting 'customer' so broadly as to include everyone who is not a broker or a dealer disregards the actual relationship between the claimant and a FINRA member and thereby frustrates FINRA members' reasonable expectations"); *Berthel*, 2011 WL 3294682, at *5 (stating that "[t]o expand the definition of 'customer' to include individuals with no direct business or investment relationship with a firm, . . . would frustrate the reasonable expectations of FINRA members"). In addition, the court notes that ensuring that FINRA members will not be subjected to terms that could not have been reasonably envisioned when joining FINRA serves the purpose of encouraging participation in organizations that have arbitration rules, such as FINRA, and is consistent with the federal policy favoring resolution in arbitration when the parties have contractually agreed to it. *Morgan*, 2012 WL 113400, at *5 (stating that "FINRA members would not have joined an organization that would compel them to arbitrate claims from any individual with whom it has even the most remote connection"). The court also notes that North is not left without a remedy in the arbitration forum. The undisputed record reflects that it was Ausdal that provided

investment advice to North, and in fact, North is pursuing FINRA arbitration against Ausdal to recover for his losses. North cannot draw Baker into arbitration based on Ausdal's actions simply because Baker is a member of FINRA. Based upon the above, Baker's motion for summary judgment is granted, and North's motion for summary judgment is denied.

## CONCLUSION

Based upon the foregoing analysis, Baker's motion for summary judgment is granted, and North's motion for summary judgment is denied. Baker is ordered to submit to the court a draft permanent injunction order by June 7, 2012.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 30, 2012